## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

USDC-GREENBELT
'23 OCT 10 PM 1:47

|  |  |
|---|---|
| DAMONTE SMITH, ) | |
| ) | |
| Petitioner, ) | |
| ) | Civil Action No. 22-cv-381-LKG |
| v. ) | |
| ) | Dated:  October 10, 2023 |
| JEFF NINES, *et al.*, ) | |
| ) | |
| Respondents. ) | |

## <u>MEMORANDUM OPINION</u>

Self-represented Petitioner Damonte Smith filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his 2019 conviction in the Circuit Court for Baltimore City, Maryland for possession with intent to distribute. ECF No. 1.[1] Respondents filed an Answer arguing that each of Smith's claims are procedurally defaulted, and each of his claims lacks merit. ECF No. 4. Smith responded.  ECF No. 7.

There is no need for an evidentiary hearing. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts and Local Rule 105.6 (D. Md. 2023); *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons that follow, the Petition is dismissed, and a certificate of appealability shall not issue.

### I.    BACKGROUND

The Court of Special Appeals of Maryland (now known as the Maryland Appellate Court) summarized the facts of Smith's case as follows:

> In the afternoon hours of February 5, 2019, Smith was walking along North Avenue in Baltimore when he was approached by two police officers. Before the officers could make contact, Smith fled. He was quickly apprehended after a brief chase. A search of Smith's person revealed multiple bags containing various narcotics. In the area near where he was apprehended, the police also

---

[1] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case Files system.

recovered a revolver loaded with seven live rounds and one spent casing. Smith was arrested and charged with possession of cocaine; possession of cocaine with intent to distribute; possession of Alprazolam; possession of Buprenorphine; possession of a firearm in nexus to a drug trafficking crime; wearing, carrying, and transporting a handgun on his person; possession of a firearm by a prohibited person; possession of ammunition by a prohibited person; and discharging a firearm in Baltimore City.

At trial, Baltimore City Police Detective Michael Wood testified that, on February 5, 2019, he was working as a member of the Southwest District Action Team ("DAT"), which was responsible for monitoring suspicious activity in certain high crime areas of Baltimore. Detective Wood testified that part of his duties included watching live feeds from closed-circuit television camera ("CCTV camera") placed throughout Baltimore City. On the day in question, Detective Wood was watching a live feed from a CCTV camera located in the area of North Avenue and Bloomingdale Road when he observed an individual, later identified as Smith, wearing a jacket that was "heavily weighed down on his right side." Detective Wood testified that individuals carrying unholstered firearms were known to have "weight in the pockets." Detective Wood continued to observe Smith and, in so doing, noticed several other mannerisms that were "characteristics of an armed person." Detective Wood eventually relayed his observations to two other detectives who were also DAT members.

Baltimore City Police Detective Anthony Taurisano testified that, on the day in question, he and his partner, Detective Shank, drove to Smith's location after being advised by Detective Wood "to stop an individual in reference to that individual displaying characteristics of an armed person." Upon locating Smith, Detective Shank exited the vehicle and attempted to stop him, but Smith fled.

Detective Taurisano testified that he pursued Smith in his vehicle and eventually located him in an alley a short distance away. Smith "hopped a fence" and went out of the officer's view. Taurisano then "heard a round discharged from a firearm." He got out of his vehicle and pursued Smith on foot, eventually regaining sight of him. As he did, Taurisano observed Smith throw a revolver onto the roof of a nearby garage. Shortly thereafter, he apprehended Smith and conducted a search of Smith's person. He discovered "two pills, a Suboxone strip, and numerous pieces of cocaine and marijuana."

Regarding the cocaine, Taurisano testified that he recovered "34 green flip top containers with rock from [Smith's] outside left jacket pocket" and "a clear plastic bag which contained five more bags containing rock substance from inside his left jacket pocket."

Taurisano, who was admitted as an expert in the area of narcotics' distribution, testified that the amount of cocaine and the way it was packaged was indicative of an intent to distribute. Taurisano testified that, after recovering the narcotics, he went onto the roof of the nearby garage, where he recovered a loaded revolver that "had seven live .22 caliber rounds and one spent casing."

> Mohammed Abdul Majid, a forensic scientist with the Baltimore City Police Department, testified that he analyzed the substances recovered from Smith. He testified that the "34 green plastic tubs with white substance" and the "five plastic bags with white substance" tested positive for cocaine. Majid also testified that the "plastic strip" contained Buprenorphine and that the two tablets contained Alprazolam.

ECF No. 4-1 at 75-78 (footnotes omitted) (For clarity, Smith has been substituted for "appellant" in this quotation).

Smith was indicted in the Circuit Court for Baltimore City on March 5, 2019. ECF No. 4-1 at 4-5. He was charged with various firearm and drug related offenses. *Id.* After a four day jury trial he was convicted, on July 9, 2019, of four counts: possession of cocaine, possession of cocaine with intent to distribute, possession of Alprazolam, and possession of Buprenorphine. *Id.* at 78. He was acquitted of possession of a firearm in nexus to a drug trafficking crime and discharging a firearm. *Id.* The jury did not reach verdict, and a mistrial was declared, as to the charges of wearing, carrying and transporting a handgun, possession of a firearm by a prohibited person and possession of ammunition by a prohibited person. *Id.* Smith was sentenced on August 2, 2019, to a total term of incarceration of 15 years. *Id.* at 75.

Smith noted a timely appeal to the Court of Special Appeals of Maryland arguing that the trial court erred in refusing to give a jury instruction on "missing evidence" and "spoliation" (*id.* at 12, 75); the trial court erred in denying his motion to represent himself and present closing arguments to the jury (*id.*); and the evidence was insufficient to sustain his convictions. *Id.* The court rejected each of Smith's claims (*id.* at 74-95): the court's mandate affirming Smith's convictions issued on February 9, 2021. *Id.* at 95.

On February 24, 2021, the Clerk of the Court of Special Appeals docketed a copy of a letter sent to Smith which advised that the Clerk was "returning [a] recent request because it does not contain the certificate of service required by Maryland Rule 1-323." *Id.* at 96. The letter did not explain what the request from Smith was and the court's electronic docket does not contain a copy of Smith's request, only the clerk's response. *Id.* Smith's later filings indicate he had attempted to file a petition for writ of certiorari. *Id.* at 99.

On April 13, 2021, the Court of Special Appeals received a letter from Smith. *Id.* at 97-99. The envelope was addressed to the Court of Special Appeals and had an "OUTGOING … Inmate Mail" stamp from North Branch Correctional Institution, where Smith is confined, dated, April 9, 2021. *Id.* at 106-07. The correspondence was captioned *Smith v. State*, Court of

Special Appeals. Sept. Term 2019, No. 1220. *Id.* at 97. Smith argued that the trial court "erred in allowing [Detective Woods] to testify" and that the trial court "abused its discretion in not giving requested instructions." *Id.* at 97-98. Smith requested a new trial. *Id.* at 97. Smith included with this filing a copy of the same documents which had a stamp indicating it had been received by the Court of Special Appeals on February 22, 2021. *Id.* at 100-01. The second copy also had a note attached which read:

> Enclosed is a Petition for Writ of Certiorari and certificate of service. This petition was submitted previously on Feb. 22, 2021, but due to requirements is officially being re-submitted. Due to my lack of competance [sic] I was not aware of these requirements. I asked for help in filing these motions but was denied assistance from the Public Defender's Office. I was also transferred to a different institution in which my property (including my legal work and writing materials) were on quarantine. Due to these circumstances it can be determined that I did not waive my right to file a proper timely petition.

*Id.* at 99.

The Court of Special Appeals construed the filing as a Motion for Reconsideration of its decision and denied the Motion on April 23, 2021. ECF No. 4-1 at 105. The court's Order stated:

> A little more than a month after the Clerk issued the mandate in this appeal, appellant filed a motion for reconsideration. Appellant attempted to file his motion before the mandate issued, but it could not be accepted because it did not have a certificate of service pursuant to Rule 1-323 and was returned to appellant. As a result, the motion for reconsideration is untimely.

*Id.*

Smith did not file a petition for writ of certiorari in the Court of Appeals of Maryland (now known as the Supreme Court of Maryland).

On February 11, 2022, this Court received Smith's Petition. ECF No. 1. The Petition is dated December 31, 2021: there is no indication on the envelope when it was submitted to prison authorities for mailing or when it was mailed by prison staff. ECF No. 1; ECF No. 1-1. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a prisoner's submission is deemed to have been filed on the date it was deposited in the prison mailing system). Smith asserts two grounds for habeas relief. ECF No. 1. First, he claims that the trial court "erred in refusing to give requested jury instruction[s] on missing evidence and/or spoliation." *Id.* at 3. Second, Smith contends that the trial court's denial of his request to give closing arguments was improper. *Id.* at 6.

4

## II.     STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings" *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall*, 572 U.S.415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]."  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis required by § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, "an unreasonable application of federal law is different from an incorrect application of federal law."  *Id.* at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not

conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly*." Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell,* 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

The Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a

state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent.[2] *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id.* (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995).

## III.   ANALYSIS

Smith raises two claims in the petition filed with this Court. First, he claims that the trial court erred in failing to give requested jury instructions regarding missing evidence and spoliation. Secondly, he alleges the trial court erred in denying his request to present his own closing arguments. ECF No. 1.

Each of Smith's claims are procedurally defaulted as he did not file a petition for writ of certiorari in the Maryland Court of Appeals. Because Smith neglected to advance each claim in a petition for writ of certiorari to the Maryland Court of Appeals each claim is unexhausted and procedurally defaulted. He is now without an avenue to bring either claim.

Under Maryland law, a criminal defendant with claims demonstrable on the trial record is entitled to one direct appeal to the Court of Special Appeals and one petition for discretionary review to the Court of Appeals. *See generally* Md. Code Ann., Cts. & Jud. Proc. §§ 12-301, 12-307 12-208. A criminal defendant in Maryland is also limited to one post-conviction proceeding, which once resolved may only be opened "in the interest of justice."

---

[2]     Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006). In his reply, Smith claims he was actually innocent because the drugs found on him were for personal use not for distribution as alleged. ECF No. 7 at 2. Such a claim of actual innocence without more is insufficient to overcome the procedural default.

Md. Code Ann., Crim. Proc. §§ 7-103(a) and 7-104.

Here the Court of Special Appeals construed Smith's filings as Motions for Reconsideration of its decision denying him relief rather than as efforts to file a petition for writ of certiorari in the Court of Appeals. Regardless of Smith's intentions it is clear from the record before the court that he did not properly file a petition for writ of certiorari.

His initial effort was filed in the Court of Special Appeals rather than in the Court of Appeals as required by Md. Rule 8-303(a). This attempt also was not proper because Smith failed to include the requisite certificate of service. Accordingly, the Clerk rejected the filing, it was not docketed and was returned to him.

Smith's second attempt to file a petition for writ of certiorari was also deficient under Maryland law. Contrary to Md. Rule 8-303(a) which requires the petition be filed in the Court of Appeals, Smith filed his documents in the Court of Special Appeals. Additionally, the filing was untimely because it was filed on April 9, 2021, more than 15 days after the Court of Special Appeals' mandate issued on February 9, 2021. *See* Md. Rule 8-302(a) (providing petition for writ of certiorari must be filed no later than 15 days after the Court of Special Appeals issues its mandate).

It is clear in light of the foregoing that Smith did not present either of his claims to the Maryland Court of Appeals and as such he failed to exhaust his state court remedies on direct appeal. Because Smith has no State corrective process available as to these claims they are procedurally defaulted. *See* 28 U.S.C. § 2254(b)(1)(B)(i).

Smith has offered no basis for finding "cause" to excuse the procedural default. Smith's reliance on his legal inexperience and ignorance of the law, the denial of assistance from the Public Defender's Office, and transfer between correctional institutions (ECF No. 7) are each insufficient to excuse his procedural default.

Smith's lack of legal experience and unfamiliarity with the legal process are insufficient to establish cause to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004); *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992).

Smith's claim of ineffective assistance of counsel is also unavailing. First, Smith has not filed a post-conviction petition claiming ineffective assistance of counsel and generally the claim of ineffective assistance must be presented to the state courts independently before such a claim can be used to demonstrate cause for a procedural default. *See Murray*, 447 U.S. at 488-89. Moreover, Smith has provided a copy of a letter to him from trial counsel dated January

8

15, 2021, advising him that the Public Defender's Office would not represent him in filing a petition for writ of certiorari. ECF No. 7-1. The letter specifically advised Smith that he could present his own petition for writ of certiorari to the Court of Appeals and advised him where to mail the petition, the information to be included in the petition, and the time constraints for filing the petition. ECF No. 7-1.

Lastly, any transfer between prisons which resulted in the loss of legal papers cannot serve as cause for the procedural default given that Smith's first filing with the Court of Special Appeals was in fact timely. The deficiency in that filing was that it was directed to the wrong court and did not contain the required certificate of service. While the second filing cured the deficiency as to the certificate it remained addressed to the wrong court. Where, as here, no petition for writ of certiorari was properly filed, and that failure was not due to a factor external to the defense or caused by the State, the cause and prejudice exception is not met.

Additionally, this Court does not find that failing to reach the merits of the defaulted claims would result in the miscarriage of justice. Federal habeas relief is denied on the grounds asserted.

## IV.    CERTIFICATE OF APPEALABILITY

Having found that the Petition for Writ of Habeas Corpus does not present a claim upon which federal habeas relief may be awarded, this Court must consider whether a certificate of appealability should issue. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S.Ct. 759, 773 (2017). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U.S.C. § 2253(c)(2). Smith may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate Order follows.

**IT IS SO ORDERED.**

LYDIA KAY GRIGGSBY
United States District Judge